GHOUSSOUB v. YAMMINE
2022 OK 64
Case Number: 118944
Decided: 06/21/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 64, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

ROLAND BOU DALHA GHOUSSOUB, Petitioner/Appellee,
v.
MARIE CHARLES YAMMINE, a/k/a MARY YAMINE or Mary Yammine, Respondent/Appellant,
and
RELIASTAR LIFE INSURANCE COMPANY, Respondent.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY

Honorable Kurt Glassco, Trial Judge

¶0 Appellant Marie Yammine, as former wife and primary beneficiary of a two million dollar life insurance policy issued by Respondent ReliaStar Life Insurance Company to her former husband, Dr. Jean Bernard, appeals a declaratory judgment finding the contingent beneficiary, Appellee Roland Ghoussoub, is entitled to the policy's death benefit. Dr. Jean Bernard died after the trial court granted the parties' divorce but prior to final judgment on all issues. The trial court declared Marie Yammine and Dr. Jean Bernard were divorced and that 15 O.S.2011 § 178

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT'S JUDGMENT REVERSED;
REMANDED FOR FURTHER PROCEEDINGS.

Jody R. Nathan, FRANDEN, FARRIS, QUILLIN, GOODNIGHT & ROBERTS, Tulsa, Oklahoma, and
Benjamin C. Faulkner, Sapulpa, Oklahoma, for Appellant,

R. Jack Freeman, LEVINSON, SMITH & HUFFMAN, P.C., Tulsa, Oklahoma, for Appellee.

OPINION

ROWE, J.:

¶1 This Court in Alexander v. Alexander15 O.S.2011 § 178

I. BACKGROUND

¶2 Dr. Jean Bernard ("Bernard") and Marie Yammine ("Yammine") were married in 2003 in the Maronite Church in Lebanon, and later in an Oklahoma civil ceremony. On June 5, 2007, ReliaStar issued "Jean J. Bernard" a two million dollar term life insurance policy on his life effective June 12, 2007 (Policy), for which he designated Yammine the sole primary beneficiary and his brother, Roland Ghoussoub ("Ghoussoub"), the contingent beneficiary.

¶3 Following the spouses' separation in 2010, after which Yammine moved to Lebanon with their two minor children, Bernard filed in 2015 to annul their ecclesiastical marriage in Lebanon and to dissolve their civil marriage in Tulsa County District Court. Yammine filed a counterclaim in the dissolution proceeding, seeking an equitable share of their property and an order requiring Bernard to maintain life insurance to secure his child support obligation during the children's minority.

¶4 In March 2017 when Bernard learned he was terminally ill, he moved for an order to dissolve the marriage and to bifurcate and reserve final judgment on all issues pursuant to Alexander. The hearing on his motion was set for mid-May 2017.

¶5 Prior to hearing, Bernard unilaterally, and without court approval, changed the primary beneficiary on the Policy to "Julien Boudhia 50% & Nisrine Masrouha 50%," effective March 31, 2017. On or about April 1, 2017, Bernard was found in a coma and hospitalized in critical condition. Two days later, his counsel filed an emergency ex parte motion for divorce alleging Bernard's death was imminent and seeking an immediate divorce to prevent Yammine from inheriting from Bernard's estate. At the hearing held the same day, the trial court granted the divorce order over Yammine's objection, reserving final judgment on property and debt issues. Yammine timely appealed the Order Granting Divorce.

¶6 Bernard was transported to Lebanon in a vegetative state in May 2017, pursuant to a guardianship order of the District Court of Tulsa County. The next month, Yammine applied for injunctive relief alleging Bernard violated the automatic temporary injunction ("ATI") mandated by 43 O.S.2011 § 110

¶7 By order filed October 5, 2017, the trial court, pursuant to Okla.Sup.Ct.R. 1.37(a)(5),

¶8 On November 22, 2017, Yammine moved to dismiss her appeal of the Order Granting Divorce. Bernard died in Lebanon on December 14, 2018. At the time of his death, Yammine was the primary beneficiary and Ghoussoub was the contingent beneficiary of the Policy. Six weeks later, Ghoussoub filed this declaratory judgment action against Yammine and ReliaStar in Tulsa County District Court.

¶9 The trial court declared Ghoussoub was entitled to the Policy proceeds finding the Order Granting Divorce was final before Bernard's death and that Yammine was precluded by operation of 15 O.S.2011 § 178

II. STANDARD OF REVIEW

¶10 Under the Declaratory Judgments Act, the determination of a competent court is reviewable in the same manner as other judgments. 12 O.S.2011 § 165412 O.S.2011 § 1651Knight ex rel. Ellis v. Miller, 2008 OK 81195 P.3d 372Gordon v. Followell, 1964 OK 74391 P.2d 242

¶11 A declaratory judgment action "pursuant to § 1651 is neither strictly legal nor equitable, but assumes the nature of the controversy at issue." Macy v. Oklahoma City School Dist. No. 89, 1998 OK 58961 P.2d 804de novo, i.e., by a non-deferential, plenary and independent examination of the trial court's legal ruling." Cole v. Josie, 2019 OK 39457 P.3d 1007

III. DISCUSSION

A. Statutory History.

Effective November 1, 1987, the Legislature enacted 15 O.S. § 178 e.g., life insurance and retirement benefits, for which contracted death benefits are paid directly to a designated beneficiary upon death of the insured. The statute provides for revocation of all contract provisions in favor of a former spouse, subject to six exceptions.

¶13 In 1994, the Legislature amended § 178(A) to add "depository agreements" and "security registrations" to its list of written contracts with death benefits provisions subject to revocation. The same year, the statutes related to those contracts, e.g. "Payable on Death" (P.O.D.) accounts, were amended to make each expressly subject to 15 O.S. § 17818 O.S. § 381.39aSee 18 O.S.2011 § 381.39a

¶14 In 2012, the majority rule in the U.S. continued to support that divorce per se does not affect a designated ex-spouse's right to receive life insurance proceeds; eight states, including Oklahoma, represented the minority position that a divorce automatically revokes an ex-spouse's beneficiary status.

 

B. Appellate arguments.

 

¶15 Both parties agree § 178(A)'s language is clear, unambiguous and intelligible on its face. Nevertheless, Yammine argues a latent ambiguity arises when subsection A is applied to the existing facts.

¶16 To support her position, Yammine contends § 178(A) does not address the hybrid Oklahoma circumstance of a bifurcated divorce proceeding that this Court approved in Alexander:

It is common for district courts to grant a divorce at one point in time but then reserve jurisdiction to address other pending issues--such as division of property or determinations as to custody or child support--at a later date. See e.g., Barnett v. Barnett, 1996 OK 60917 P.2d 473Hibbard v. Hibbard, 1952 OK 273247 P.2d 504

2015 OK 52Alexander, Yammine argues § 178(A) does not apply when a spouse dies after the divorce order is entered but prior to final judgment on all issues.

¶17 Ghoussoub argues § 178(A)'s plain verbiage makes no such distinction between a divorce decree on all issues and one that has been bifurcated from other issues, such as property division, as permitted by Alexander. Pointing out "property interests" and "divorce proceeding" are absent from § 178(A)'s terms, he asserts Yammine's interpretation nullifies the established legal principles pronounced in Alexander. Relying on the parties' stipulation that Yammine and Bernard were divorced when he died, Ghoussoub argues § 178(A) revokes Yammine's primary beneficiary status by operation of law.

¶18 "[L]egislative intent is to be first sought in the language of the statute and when that intent is plainly expressed so that the meaning of the statute is clear . . . there is no room for judicial construction and the statute must be followed without further inquiry." McNeill v. City of Tulsa, 1998 OK 2953 P.2d 329In re J.L.M., 2005 OK 15109 P.3d 336Id. Rules of statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes. Corr v. Smith, 2008 OK 12178 P.3d 859

¶19 When interpreting statutes, we do not limit our consideration to a single word or phrase. McNeill, 1998 OK 2In re Estate of Little Bear, 1995 OK 134909 P.2d 42

¶20 Section 178(A) provides:

If, after entering into a written contract in which a beneficiary is designated or provision is made for the payment of any death benefit (including life insurance contracts, annuities, retirement arrangements, compensation agreements, depository agreements, security registrations, and other contracts designating a beneficiary of any right, property, or money in the form of a death benefit), the party to the contract with the power to designate the beneficiary or to make provision for payment of any death benefit dies after being divorced from the person designated as the beneficiary or named to receive such death benefit, all provisions in the contract in favor of the decedent's former spouse are thereby revoked. Annulment of the marriage shall have the same effect as a divorce. In the event of either divorce or annulment, the decedent's former spouse shall be treated for all purposes under the contract as having predeceased the decedent.

¶21 The plain meaning of § 178(A)'s terms reveals an irreconcilable conflict when read in conjunction with 43 O.S.2011 § 110

C. Any temporary orders and the automatic temporary injunction, or specific terms thereof, may be vacated or modified prior to or in conjunction with a final decree on a showing by either party of facts necessary for vacation or modification. Temporary orders and the automatic temporary injunction terminate when the final judgment on all issues, except attorney fees and costs, is rendered or when the action is dismissed. The court may reserve jurisdiction to rule on an application for a contempt citation for a violation of a temporary order or the automatic temporary injunction which is filed any time prior to the time the temporary order or injunction terminates. (Emphasis added).

C. 15 O.S. § 178(A) Must Be Read In Pari Materia With 43 O.S. § 110(C). 

¶22 "Different statutes on the same subject are generally to be viewed as in pari materia and must be construed as a harmonious whole." Taylor v. State Farm Fire & Cas. Co., 1999 OK 44981 P.2d 1253in pari materia are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation." Id.

¶23 Prior to 2002, the parties to a dissolution proceeding could request the trial court issue a temporary order to restrain the disposition of any property and provide other injunctive relief proper under the circumstances. See 43 O.S.2001 § 110See 43 O.S.Supp.2002 § 11043 O.S.2011 § 110

¶24 The ATI expressly restrains both parties from "changing or in any manner altering the beneficiary designation on any life insurance policies on the life of either party or any of their children." 43 O.S.2011 § 110terminate when the final judgment on all issues, except attorney fees and costs, is rendered or when the action is dismissed." (Emphasis added).

¶25 The ATI mandated by § 110--and the temporary order entered by the trial court at Yammine's request--govern the life insurance policy at issue here. While Ghoussoub claims the Policy's beneficiary was revoked by § 178(A), his position fails to consider § 178(A)'s conflict with § 110(C), which was enacted fifteen years after § 178(A). Read alone, § 178(A)'s application to a divorce order with pending property division issues, including a life insurance policy, is unclear. In contrast, § 110(C) very clearly maintains the trial court's control of beneficiary changes to a life insurance policy owned by the parties until final judgment on all issues is rendered. "[W]here a matter is addressed by two statutes--one specific and the other general--the specific statute, which clearly includes the matter in controversy and prescribes a different rule, governs over the general statute." Rogers v. Quiktrip Corp., 2010 OK 3230 P.3d 853Id. Accordingly, we find the specific language in § 110(C) controls over § 178(A) in this cause.

¶26 "The Legislature is not presumed to have done a vain or useless act in the promulgation of a statute." Comer v. Preferred Risk Mut. Ins. Co., 1999 OK 86991 P.2d 1006in the future." (Emphasis added). Starkey v. Okla. Dep't of Corr., 2013 OK 43305 P.3d 1004

¶27 Reading the two statutes in pari materia, we can only conclude the later enactment of § 110(C) effectively limits § 178(A)'s "after being divorced" language to a divorce where final judgment on all issues is rendered. To find otherwise creates an absurd result wherein one's designation as a life insurance beneficiary, while protected by § 110(C) in a bifurcated proceeding where final judgment has yet to be rendered, is concurrently revoked by § 178(A).

IV. CONCLUSION

¶28 Section 178(A) requires a final judgment on all issues. The trial court erred by interpreting 15 O.S.2011 § 178

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT'S JUDGMENT REVERSED;
REMANDED FOR FURTHER PROCEEDINGS. 

Darby, C.J., Kauger, Edmondson, Gurich and Rowe, JJ., concur.

Kane, V.C.J. (by separate writing), Winchester and Combs, J.J. (by separate writing), dissent.

Kuehn, J., not participating.

FOOTNOTES

2015 OK 52357 P.3d 481Alexander granted the spouses a divorce, ordered mediation for the property division issues, and memorialized the findings in a court minute. The wife died before a settlement was reached or a journal entry had been filed. The trial court granted the husband's motion to dismiss the divorce action, arguing it abated when the wife died and deprived the court of jurisdiction. We reversed, first holding the divorce granted to the spouses was enforceable when pronounced. After approving the procedure in dissolution actions during which the trial court bifurcates the issues, grants the divorce and retains jurisdiction over reserved property division and other issues for later hearing, we ordered the case to proceed for determination of the property division issues.

6 O.S.2011 § 9016 O.S.2011 § 202571 O.S.2011 §§ 907

See Sveen v. Melin, 138 S.Ct. 1815, 1819 n.1, 201 L.Ed.2d 180 (2018).

B. Subsection A of this section shall not apply:

1. If the decree of divorce or annulment is vacated;

2. If the decedent had remarried the former spouse and was married to said spouse at the time of the decedent's death;

3. If the decree of divorce or annulment contains a provision expressing an intention contrary to subsection A of this section;

4. If the decedent makes the contract subsequent to the divorce or annulment;

5. To the extent, if any, the contract contains a provision expressing an intention contrary to subsection A of this section; or

6. If the decedent renames the former spouse as the beneficiary or as the person or persons to whom payment of a death benefit is to be made in a writing delivered to the payor of the benefit prior to the death of the decedent and subsequent to the divorce or annulment.

C. For purposes of subsection A of this section, "death benefit" shall not include:

1. Any interest in property in which the decedent's former spouse has an interest as a joint tenant; or

2. Any interest in property in which the decedent's former spouse has a beneficial interest in an express trust created by the decedent during the decedent's lifetime for which provision is made in Section 175 of Title 60 [60-175] of the Oklahoma Statutes.

D. This section shall apply to any contract of a decedent made and entered into on or after November 1, 1987 and to depository agreements and security registrations made and entered into on or after September 1, 1994.

Subsection D originally provided "[t]his section shall apply to any contract of a decedent dying on or after November 1, 1987." The Eighth Circuit held § 178 was unconstitutional when applied to a life insurance policy purchased prior to its enactment and that revocation of the provisions in favor of the former spouse violated the Contract Clause of the U.S. Constitution. See Whirlpool v. Ritter, 929 F.2d 1318 (8th Cir. 1991).

 

 

KANE, V.C.J., dissenting:

¶1 I dissent for the reasons that (1) the trial court's correction of the ATI violation did nothing to subvert the effect of the divorce granted after the violation, and (2) the trial court did not violate the ATI.

THE TRIAL COURT'S CORRECTION OF THE ATI VIOLATION DID NOTHING TO SUBVERT THE EFFECT OF THE DIVORCE GRANTED AFTER THE VIOLATION

¶2 Certainly, the amendment of the insurance beneficiaries by Dr. Bernard on March 31, 2017 (before the grant of divorce) was void ab initio, by operation of 43 O.S.2011 § 110

¶3 Why would the court grant the request to void the ATI violation, if the gift to the spouse was voided by the subsequent divorce? Because the rights of people other than the former spouse were also impacted, and Oklahoma law required the Court to set aside the illegal act of Dr. Bernard. The wrongful violation of the ATI by Dr. Bernard, and the Court's subsequent correction of this act did nothing to subvert the effect of the trial court's grant of divorce to the litigants after the ATI violation.

THE ACT OF THE TRIAL COURT DID NOT VIOLATE THE ATI

¶4 While the majority does an admirable job of harmonizing two seemingly conflicting statutes, the operative word in this statement is "seemingly." In fact, the statutes do not conflict in this case. It is essential that we note that the ATI is addressed exclusively to ex parte actions of the litigants in the divorce action. The statute enjoins only the parties. The statute makes requirements of only the parties. The statute restrains only the actions of the parties. The statute does nothing to restrain, limit, or enjoin the trial court.

¶5 The true effect of the grant of divorce by the trial court was to modify the ATI prior to the final conclusion of the case. The ATI statute provides: "Any temporary orders and the automatic temporary injunction, or specific terms thereof, may be vacated or modified prior to or in conjunction with a final decree on a showing by either party of facts necessary for vacation or modification." 43 O.S. § 110

¶6 After Dr. Bernard attempted to change his insurance provisions the wrong way (ex parte violation of the ATI), he thereafter accomplished the change the correct way--by seeking leave of the trial court. The trial court granted the contested request for early grant of divorce under our teachings in Alexander v. Alexander, 2015 OK 52357 P.3d 481

¶7 After the legal status of the parties was modified by the trial court, and after the trial court returned the status of the insurance policy beneficiaries to the state existing prior to the ATI violation, the insurance policy then stood with the gift to the former spouse revoked, per 15 O.S.2011 § 178after the ATI violation. This is the only rational and just construction of the facts and law before us in this case.

¶8 For these reason, I respectfully dissent.

 

 

COMBS, J., with whom WINCHESTER, J., joins, dissenting:

¶1 I respectfully dissent.

¶2 Here the parties had a valid automatic temporary injunction (ATI) entered upon the filing of the divorce action. By the terms of 43 O.S.2011, § 11015 O.S.2011, § 178